UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DEBORAH ANDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:18-cv-224-PPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Deborah Anderson has appealed from an ALJ's denial of her application for Social Security disability benefits. Anderson focuses her argument on a single alleged error on the part of the ALJ. She says that the ALJ failed to adequately consider the impairments and effects of her obesity, and that had he done so, he would have found her disabled. I disagree. The ALJ made repeated references to Anderson's obesity and fully considered how it might impact her ability to work. I will therefore affirm the ALJ's decision.

**Background**

Anderson claims that she became disabled on January 1, 2010 when she was 54 years old. At the time of her hearing in March 2017, Anderson was 60 years old, stood approximately 65 inches tall and weighed more than 290 pounds. [A.R.[1] 272, 14.] In her

---
[1] The Administrative Record (A.R.) in this case is found at Docket Entry # 16. Citations are to the page number in the lower left-hand corner of the A.R.

application for benefits, Anderson alleged a series of impairments and medical conditions which she said rendered her disabled. This included: osteoarthritis/sciatica, shoulder bursitis, paresthesia of both hands, diabetes mellitus Type II, hyperlipidemia, anemia, hypertension, benign positional vertigo, tachycardia, morbid obesity, asthma, cataracts, melanoma, lichen sclerosus, and other skin diseases. [DE 21 at 8-10; *see also* A.R. at 14.] Of all of these alleged impairments, the ALJ found only two of these to qualify as severe impairments: Anderson's obesity and osteoarthritis in her shoulders and right knee. [A.R. at 14.] The ALJ further found that while Anderson had been diagnosed with sinus tachycardia and hypertension, in her hearing testimony Anderson testified that she had not experienced "any cardiac symptoms" and there was no medical evidence to indicate that the hypertension impacted her ability to work. [*Id.*] Anderson does not challenge the ALJ's findings in this area.

The ALJ found that none of Anderson's severe impairments met or were medically equivalent to any Social Security listing. [A.R. at 14.] As such, the ALJ went on to determine Anderson's residual functional capacity ("RFC"). The ALJ determined that Anderson had an RFC to perform light work as defined in 20 CFR § 404.1567(b), subject to additional limitations. Specifically, he determined she could lift or carry up to 20 pounds occasionally and 10 pounds frequently, sit, stand or walk for 6 hours of an 8 hour workday. [*Id.* at 15.] The ALJ further stated she was limited to only occasional balancing, stooping, kneeling, crouching, and climbing of ramps or scaffolds, and frequently (bot not constantly) able to reach overhead and avoid hazards like wet

surfaces, moving machinery and unprotected heights. [*Id.*] This RFC was determined after reviewing all of Anderson's alleged impairments, their symptoms and severity.

With this RFC in mind, the ALJ determined whether Anderson could return to either of her previous two jobs as a general clerk or cashier (as those are defined in the Dictionary of Occupational Titles). [A.R. at 18.] Anderson testified that she would return to those jobs, but they required "to do too much lifting and reaching." *Id.* The Vocational Expert, Richard T. Fisher, disagreed and testified that Anderson performed her prior jobs at an exertion level consistent with her RFC and that she could continue to perform these jobs. [*Id.*] The ALJ agreed with the Vocational Expert and thus found that Anderson was not disabled within the meaning of the applicable Social Security laws and regulations. [A.R. 8.] After the ALJ issued his written decision denying benefits, the Appeals Council reviewed the decision and affirmed. [A.R. 1.]

## Discussion

In a Social Security disability insurance appeal, my role as district court judge is limited. I don't start from scratch and determine whether a claimant is disabled and entitled to benefits. Instead, my job is to review the ALJ's findings, and that review is deferential. My task is to determine whether the ALJ applied the correct legal standards and whether the decision's factual determinations are supported by substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). If substantial evidence supports the ALJ's factual findings, they are conclusive. *Id.*; 42 U.S.C. §405(g).

Several decades ago the Supreme Court set the bar fairly low in its definition of

what amounts to "substantial evidence" under the Social Security Act. It is less than a preponderance of the evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Given this modest standard, the review is a light one, but of course this does not mean that I can "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). My review is guided by the principle that while "[t]he ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that we can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

As mentioned, Anderson has only a single challenge to the ALJ's decision. She argues that in formulating the RFC, the ALJ inadequately considered the effects of Anderson's obesity in violation of the directives of SSR 01-1p. This Ruling requires an ALJ to consider a claimant's obesity at different steps in the disability determination, including what effects obesity has on a claimant's RFC and whether obesity may exacerbate a claimant's other impairments. SSR 01-1p. Anderson says that the ALJ's opinion, as a result of this deficiency, cannot be "meaningfully reviewed." *See Newton v. Colvin*, No. 3:12-CV-776 JD, 2014 WL 772659, at *9 (N.D. Ind. Feb. 25, 2014) (reversing ALJ's decision because their perfunctory consideration of an impairment prevented the district court from "conducting a meaningful review of the decision").

Anderson implies that if the ALJ properly considered the way her obesity impacts her other impairments, he would have found her disabled. Or as Anderson says in her brief "[t]he ALJ explained that he considered obesity in combination, but did not explain how the impairments interacted and to what degree." [DE 21 at 15.] In doing so, Anderson compares her situation to the one in *Salaiz v. Colvin*, 202 F. Supp.3d 887, 895 (N.D. Ind. 2016) in which the court reversed an ALJ who had found a claimant's obesity to be a severe impairment but did not otherwise reference the claimant's obesity beyond a single statement that "[t]he claimant's weight, including the impact on her ability to ambulate, as well as her other body systems, has been considered within the functional limitations determined herein." *Id.* As noted in that decision, such a statement "provides no insight into how her weight affects her ability to work." *Id.* For reasons I will explain, *Salaiz* is not a good comparator to this case.

Let's start by examining the ALJ's written decision. It is clear the ALJ considered the effects of Anderson's obesity when determining her RFC. Specifically, the ALJ considered her weight, BMI, and attendant obesity when discussing Anderson's back pain and osteoporosis and the objective medical records supporting these impairments. The ALJ noted that her July 2011 x-rays "revealed minimal degenerative changes." [A.R. 16, 390-396.] And at the time of her August 2012 diagnosis of osteoporosis, the ALJ noted that she weighed 302 pounds, more than Anderson weighed at the time of her hearing. [A.R. 16.] He furthered chronicled that when Anderson sought treatment for back stiffness and pain and swelling in her right knee in February 2013 her BMI was

Anderson implies that if the ALJ properly considered the way her obesity impacts her other impairments, he would have found her disabled. Or as Anderson says in her brief "[t]he ALJ explained that he considered obesity in combination, but did not explain how the impairments interacted and to what degree." [DE 21 at 15.] In doing so, Anderson compares her situation to the one in *Salaiz v. Colvin*, 202 F. Supp.3d 887, 895 (N.D. Ind. 2016) in which the court reversed an ALJ who had found a claimant's obesity to be a severe impairment but did not otherwise reference the claimant's obesity beyond a single statement that "[t]he claimant's weight, including the impact on her ability to ambulate, as well as her other body systems, has been considered within the functional limitations determined herein." *Id.* As noted in that decision, such a statement "provides no insight into how her weight affects her ability to work." *Id.* For reasons I will explain, *Salaiz* is not a good comparator to this case.

Let's start by examining the ALJ's written decision. It is clear the ALJ considered the effects of Anderson's obesity when determining her RFC. Specifically, the ALJ considered her weight, BMI, and attendant obesity when discussing Anderson's back pain and osteoporosis and the objective medical records supporting these impairments. The ALJ noted that her July 2011 x-rays "revealed minimal degenerative changes." [A.R. 16, 390-396.] And at the time of her August 2012 diagnosis of osteoporosis, the ALJ noted that she weighed 302 pounds, more than Anderson weighed at the time of her hearing. [A.R. 16.] He furthered chronicled that when Anderson sought treatment for back stiffness and pain and swelling in her right knee in February 2013 her BMI was

50.11. [*Id.*] But the ALJ also specifically noted that the physical examination from that day "was grossly normal, revealing full range of motion and no swelling throughout her shoulders, elbows, knees, and ankles." [*Id.*; A.R. 454-463.]

Furthermore, while the effects of obesity were not specifically mentioned when discussing the consultative physical examination of Anderson conducted by Dr. Frances Dwyer in May 2013, the effects (or lack thereof) of Anderson's obesity on her physical impairments are clear: "Upon examination, [Anderson] demonstrated slightly reduced range of motion in her lumbar spine but walked steadily and without assistance, demonstrated full grip strength and dexterity, had a negative straight leg raise bilaterally, and did not show any evidence of pain when asked to sit, stand and perform other activities." [A.R. 16 (cleaned up); A.R. 471-477.] And in the May 2015 medical records, Anderson's physician noted that her knee pain "should improve with weight loss." [A.R. 17.]

The ALJ further incorporated Anderson's obesity and its impact on her osteoporosis when formulating specific restrictions to Anderson's RFC. The ALJ stated, "[t]he symptoms resulting from this condition, considered in combination with the claimant's obesity and her testimony that she has difficult reaching overhead reasonably justify the exertional, postural, and environmental restrictions outlined in her RFC above." [A.R. 17.] This is a clear statement, which when coupled with the above analysis of Anderson's medical history, shows the ALJ considered the effects of her obesity on her impairments. In short, the ALJ's opinion is replete with references to,

and analysis of, Anderson's obesity.

Given these specific discussions of the effects of Anderson's obesity and how it interplayed with her osteoporosis, back and knee pain, this case seems a far fry from ALJ's cursory examination of obesity in *Salaiz*, which Anderson analogizes herself to. *See Salaiz*, 202 F. Supp.3d at 895. Instead, it's obvious that the ALJ fully considered Anderson's obesity; he does so explicitly multiple times in the written decision. And with his additional discussion of other medical records its clear the ALJ was aware of Anderson's obesity. An ALJ need not even explicitly reference obesity when it is plain that it factored into the decision-making process and its conclusions. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (affirming denial of benefits and finding no error where "although the ALJ did not explicitly consider [claimant's] obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions").

In sum, what is really going on here is that Anderson simply disagrees with the conclusions drawn by the ALJ. But I cannot reverse the ALJ on that basis. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) ("When reviewing for substantial evidence, we do not displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations.").

Finally, there is the issue of how obesity impacts Anderson's diabetes. Anderson claims, in a cursory fashion, that the ALJ's error was compounded by the fact he did not mention diabetes in Steps 2, 3 or 4 of the sequential analysis. Nor did he mention how Anderson's obesity impacted her diabetes. But as the Commissioner notes, there was no

evidence that Anderson's diabetes caused her any limitations beyond those found in the RFC. And tellingly, Anderson does not suggest any in her briefing, and the objective medical evidence shows that Anderson's diabetes was "controlled." [A.R. at 605.] Thus, while it is possible that Anderson's diabetes was impacted by her obesity, without any resulting limitations, it's an empty point and any error would be at most harmless. *See Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006). A condition, disease or impairment that doesn't actually limit an individual's abilities or cause limitations in their ability to work will not be a basis to reverse an ALJ's otherwise well-reasoned and supported decision.

**Conclusion**

For the foregoing reasons, the decision of the ALJ denying Deborah L. Anderson's application for Social Security disability benefits is AFFIRMED.

SO ORDERED on June 10, 2019.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT